UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
FILED
FEB - 5 2014
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**CIVIL ACTION NO. 12-108-HRW**

**JASON SETH MULLINS**
**and**
**TABITHA DAWN MULLINS,** **PLAINTIFFS,**

**v.** **MEMORANDUM OPINION AND ORDER**

**MARATHON PETROLEUM CO., LP,**
**and MARATHON INVESTMENT LLC,** **DEFENDANTS.**

This matter is before the Court upon the Marathon Defendants' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment [Docket No. 45]. This Court permitted Plaintiffs additional time in which to respond to the motion [Docket No. 52]. Plaintiffs have filed a supplemental response [Docket No. 55] and this matter is ripe for decision. For the reasons set forth herein, this Court finds that the Defendants are entitled to judgment as a matter of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jason Mullins alleges that on May 11, 2012, while he was employed by Defendant Marathon Petroleum Company as a barge cleaner, Ken Rakes, an employee of Securitas Security Services saw a rifle in backseat of Plaintiff's vehicle, which was parked Marathon's lot [Amended Complaint, Docket No. 13 at ¶ 19]. Plaintiffs allege that after the hunting rifle was observed in his vehicle, Mr. Mullins was called into a meeting with three

members of Marathon's safety department. [*Id.* at ¶ 25]. Plaintiffs assert that after several meetings, Marathon informed Mr. Mullins that he was being suspended one day without pay and placed on probation for 24 months for violating the company's weapons policy. [*Id.* at ¶¶ 25-29].

Plaintiffs allege that as a result of this discipline, Mr. Mullins could be "fired for any violation of any company rule or policy, no matter how minor." [Doc #: 13 at ¶ 30]. Plaintiffs also claim that as a result of the discipline imposed by Marathon, Mr. Mullins was unable "to apply and test for several higher-paying positions" with Marathon. [Doc #: 13 at ¶ 31]. They contend that Mr. Mullins "intended to pursue higher paying positions prior to being placed on probation." [Doc #: 13 at ¶ 33]. Plaintiffs further allege that as a result of the actions of the Defendants, Mr. Mullins "suffered a great deal of stress and anxiety." [Doc #: 13 at ¶ 37]. They claim that this culminated in Mr. Mullins being hospitalized for five days for treatment of an aneurism resulting from a drastic increase in his blood pressure. [Doc #: 13 at ¶ 39-41].

On November 30, 2012, Plaintiff Jason Mullins and his wife Tabitha Mullins filed this lawsuit in Boyd Circuit Court against Marathon, Securitas, Chet Smith, Bea Smith and Jamie Alcorn [Docket No. 1-1] seeking the following elements of damages:

(a) Past mental and physical pain, suffering and inconvenience;
(b) Future mental and physical pain, suffering and inconvenience;
( c) Embarrassment and humiliation;
(d) Past medical expenses;
(e) Future medical expenses;
(f) Lost wages and benefits;
(g) Punitive damages; and
(h) All incidental and consequential expenses incurred by the Plaintiff.

[Docket No. 13, p. 17].

In subsequent filings with the Court, Plaintiffs state that they have suffered damages in excess of $33,000,000 [Docket No. 55, p. 6].

Following Defendants' removal, Plaintiffs amended their Complaint. The Amended Complaint asserts six claims. Count One asserts a claim for a violation of KRS 237.106, which states "no person ... shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm ... in a vehicle on the property," KRS 237.106(1), and creates a private right of action against an employer who "punishes an employee who is lawfully exercising a right guaranteed by this section....," KRS 237.106(4). Plaintiff alleges the Defendants violated this statute by "disciplining the Plaintiff...for possessing a hunting rifle in the back seat of his vehicle...pursuant to a company policy that was established in direct violation of applicable Kentucky statutes and case law." [Docket No. 13 at ¶63.]

Count Two asserts a claim for a violation of KRS 527.020(8), which sets forth a specific exception to the criminal prohibition on carrying concealed weapons without a license. KRS 527.020(8) permits anyone to store a weapon in an "enclosed container, compartment or storage space" within an automobile, such as a "glove compartment, center console, or seat pocket." Plaintiffs allege Defendants violated this statute by "disciplining the Plaintiff...for possessing a hunting rifle in the back seat of his vehicle...pursuant to a company policy that was established in direct violation of applicable Kentucky statutes and case law." [Docket No. 13 at ¶¶68-69.]

Count Three asserts a claim for wrongful discharge under the public policy exception to the at-will employment doctrine. Count Three claims that Mr. Mullins was subjected to disciplinary action for the "exercise of rights protected by the Kentucky and United States Constitutions, and the public policy of this Commonwealth." [Docket No. 13 at ¶ 77.]

Count Four asserts a claim for civil conspiracy, alleging that the "concerted actions of the Defendants deprived the Plaintiff of his right to bear arms as provided by the Constitution of the

Commonwealth of Kentucky" and other "Kentucky state law, including but not limited to, K.R.S. § 237.106 and K.R.S. § 527.020." [Docket No. 13 at ¶¶86-87.]

Count Five asserts a claim for tortious interference with Mullins' employment relationship with Marathon. Count Five alleges that the Individual Defendants, Securitas, and Rakes "deliberately and intentionally acted in a manner that interfered with the business relationship between the Plaintiff and Defendant Marathon." [Docket No. 13 at ¶ 94.]

Count Six asserts a claim for loss of consortium on behalf of Tabitha Mullins, alleging that the Defendants' actions caused Tabitha Mullins to suffer "loss of society, affection, assistance, and/or household services, and depression, all to the detriment of her marital relationship" with Jason Mullins. [Docket No. 13 at ¶ 101.].

Thereafter this Court entered an order dismissing Defendants Securitas, Rakes, and the Individual Defendants, leaving the Marathon Defendants as the only remaining defendants in the case. [Docket No. 40]. These defendants now seek judgment in their favor.

The Court notes that Mr. Mullins was subsequently terminated from his employment with Marathon on August 7, 2013, eight months after this lawsuit was filed. According to Marathon, the termination was prompted by a safety-related incident unrelated to the Weapons Policy violation at issue in this lawsuit. Plaintiffs have not alleged any claims relating to Mr. Mullins' termination in this lawsuit.

## II. STANDARD OF REVIEW

The standards for a motion for judgment on the pleadings under F.R.C.P. 12 ( c) are the same as for a motion to dismiss under Rule 12(b)(6). For purposes of dismissal pursuant to Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and

its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Moreover, where material outside the pleadings are presented, the Court may invoke the procedure set forth in Rule 12(d) and consider the motion as one for summary judgment. Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. 317, 422-423 (1986).

## III. ANALYSIS

### A. Marathon is entitled to judgment as to Count One of the Amended Complaint.

In Count One of their Complaint, Plaintiffs allege violation of KRS § 237.106. The statute provides, in pertinent part:

> (1) No person, including but not limited to an employer, who is the owner, lessee, or occupant of real property shall prohibit any person who is legally entitled to possess a firearm from possessing a firearm, part of a firearm, ammunition, or ammunition component in a vehicle on the property.
>
> ...
>
> (4) An employer that fires, disciplines, demotes, or otherwise punishes an employee who is lawfully exercising a right guaranteed by this section and who is engaging in conduct in compliance with this statute shall be liable in civil damages. An employee may seek and the court shall grant an injunction against an employer who is violating the provisions of this section when it is found that the employee is in compliance with the provisions of this section.

KRS § 237.106 (1) and (4).

Pursuant to the unambiguous wording of the statute, a cause of action will only lie under

KRS 237.106 if an employer "prohibits" employees from keeping weapons in their vehicle.

Marathon's Weapons Policy does not prohibit Kentucky employees from storing weapons in their vehicles. The Kentucky Addendum to the policy states "for Kentucky sites only, employees or contractors who lawfully possess a weapon may store such a weapon in his or her own privately-owned vehicle," provided certain administrative requirements are met, including the requirement that the employee complete and have on file a current Weapons Approval Form disclosing the weapon. [Docket No. 45-2].

It cannot be disputed that Marathon does not "prohibit" employees from keeping weapons in their vehicle. Rather, its policy plainly states that " employees or contractors who lawfully possess a weapon may store such a weapon in his or her privately-owned vehicle," provided certain administrative requirements are met, including the requirement that the employee complete and have on file a current Weapons Approval Form disclosing the weapon. [Docket No. 45-2] (emphasis added). As such, contrary to Plaintiffs' allegation, this policy cannot be read to contravene KRS 237.106.

Plaintiffs contend that the statute "plainly does apply" and "gives (Mr. Mullins) the right to keep a weapon in (his) vehicle.' [Docket No. 55, p.1]. Plaintiffs misconstrue the statute by assuming that it applies to all forms of regulation, up to and including outright prohibition. However, "prohibit" is not synonymous with "regulate." *See e.g. Mitchell v. Univ. of Ky.*, 366 S.W.3d 895, 901 n.5 (Ky. 2012) (distinguishing universities' right "to prohibit the carrying of concealed deadly weapons…." from its "right to 'control' all deadly weapons on all property it owns or controls….") (italics in original). If the Kentucky legislature had intended to limit an employer's right to require the disclosure of weapons, they would have done so. They did not.

KRS 237.106 does not regulate "approval" or "disclosure" requirements at all. It only addresses prohibition. Marathon's policy does not fall within the purview of the statute. Thus, Mr. Mullins has not alleged facts that could demonstrate a violation of the statute

Moreover, the record reveals that Jason Mullins was in violation of Marathon's policy, specifically the disclosure requirement. According to an Affidavit filed by Jamie Alcorn, Marathon's Facility Manager, the basis for Mr. Mullins' discipline was his "fail[ure] to comply with Marathon's administrative procedure and complete a Weapons Approval Form," not Mr. Mullins' possession of a firearm in his vehicle per se. [Docket No. 2-4 ¶ 5]. Mr. Alcorn further stated '[a]t no time was Mr. Mullins ever told that he was prohibited from bringing a firearm onto the property, only that he must comply with the [policy] if he chose to do so." [Docket No. 2-4 ¶ 6]. This Affidavit was filed with Defendants' Notice of Removal and Mr. Mullins has never disputed its accuracy.

Therefore, Plaintiffs' claim in Count One – that Mr. Mullins was disciplined "pursuant to a company policy that was established in direct violation of applicable Kentucky statutes" – fails as a matter of law.

### B. Marathon is entitled to judgment as to Count Two of the Amended Complaint.

Similarly, Count Two of the Amended Complaint, alleging violation of KRS 527.020, cannot be used as a basis for liability against Marathon. First, this statute sets forth the law in Kentucky with regard to **concealed** deadly weapons. The Statute does not speak to the rights of Kentucky citizens with regard to deadly weapons that, as in this case are not concealed.

Further, although the statute also outlines certain exceptions to what constitutes a

concealed weapon, it does not create any substantive right with regard to a deadly weapon that is not concealed. The statute provides in pertinent part:

> A loaded or unloaded firearm or other deadly weapon shall not be deemed concealed on or about the person if it is located in any enclosed container, compartment, or storage space installed as original equipment in a motor vehicle by its manufacturer, including but not limited to a glove compartment, center console, or seat pocket, regardless of whether said enclosed container, storage space, or compartment is locked, unlocked, or does not have a locking mechanism. No person or organization, public or private, shall prohibit a person from keeping a loaded or unloaded firearm or ammunition, or both, or other deadly weapon in a vehicle in accordance with the provisions of this subsection. Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction.
>
> KRS § 527.020(8).

In this case, Plaintiffs concede Mr. Mullins' firearm was not concealed in any enclosed container in his vehicle, which forecloses any claim under KRS 527.020(8). Plaintiffs' Amended Complaint plainly alleges the weapon was lying in plain sight on the back seat of the vehicle, not in any enclosed compartment. [Docket No. 13 at ¶ 22.] Indeed, the Amended Complaint specifically alleges that "[t]he firearm located in the Plaintiff's vehicle was not 'concealed' under Kentucky law." [*Id.*, ¶ 57.] As the firearm was not concealed in any enclosed container or compartment in Mr. Mullins vehicle, Plaintiffs' claim under KRS 527.020(8) fails as a matter of law.

### C. Marathon is entitled to judgment as to Count Three of the Amended Complaint.

Count Three of Plaintiffs' Amended Complaint alleges to state a claim for common law wrongful discharge pursuant to the public policy exception to the at-will employment

doctrine. The terminable-at-will doctrine and the public policy exceptions to that doctrine address the respective rights and duties as between an employer and its employee. *See e.g.* *Mendez v. University of Ky. Bd. of Trustees*, 357 S.W.3d 534, 544 (Ky. App. 2011) (*citing* *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 198 (Ky. 2001)) ("Kentucky law permits an employer to discharge an employee for good cause, for no cause, or for a cause that some might view as morally indefensible."").

Under Kentucky law, a claim for common law wrongful discharge in violation of public policy requires that the discharge be contrary to a fundamental and well-defined public policy that is "evidenced by a constitutional or statutory provision." *Mitchell*, 266 S.W.3d 895, 898 (quoting *Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)).

Plaintiffs ground their public policy claim on the *Mitchell* decision, which recognized a claim for discharging an employee in violation of Kentucky's "strong public policy in favor of exempting a person's vehicle from restrictions on the possession of deadly weapons." The *Mitchell* Court explicitly determined that this public policy was expressed in the same statutes Plaintiffs here rely upon in Counts One and Two – *i.e.*, KRS 527.020 and 237.106. However, the *Mitchell* Court stated that determining "whether UK's termination of Mitchell violated public policy" turned on "examin[ation of] the relevant sections of the Kentucky Revised Statutes," and its holding was expressly predicated on the determination that "an explicit legislative statement, KRS 237.106(4), prohibited his discharge, and that the reason for his discharge was his exercise of a right conferred by well-established legislative enactments in KRS 527.020(4) and (8)." 366 S.W.3d at 898, 903. Thus, the *Mitchell* decision makes clear that a "public policy" wrongful discharge claim requires the plaintiff to establish that the discharge violated the express terms of

the statutes concerning the right to carry firearms.

In this case, Plaintiffs cannot make such a showing because, as discussed *supra*, Marathon's Weapons Policy does not violate any Kentucky statute. The Kentucky statutes do not restrict employers' reasonable regulation of firearms short of an outright prohibition, such as Marathon's requirement that firearms be disclosed in a Weapons Approval Form. Therefore, this claim fails as a matter of law.

**D. Marathon is entitled to judgment as to Count Four of the Amended Complaint.**

Count Four alleges that the Individual Defendants, Rakes and Securitas, all of whom have been dismissed from this lawsuit, tortiously interfered with Mr. Mullins' relationship with Marathon. There are no allegations against Marathon in this regard. Indeed, Plaintiffs do not address this claim in their responses to Marathon's dispositive motion. Accordingly, this claim will be dismissed.

**E. Marathon is entitled to judgment as to Count Five of the Amended Complaint.**

Count Five alleges civil conspiracy. A claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 261 (Ky. App. 2008). "The question of whether a conspiracy theory has been adequately pled often turns upon the existence of an agreement, which is the essential element of a conspiracy claim, and in pleading that a defendant entered into an agreement, 'the plaintiff must set forth more than just conclusory allegations of the agreement....'" *Acosta Orellana v. Croplife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010).

Plaintiffs' Amended Complaint fails to allege the existence of an agreement. Rather, Plaintiffs' allegation is wholly conclusory: "The Defendants corruptly or unlawful[ly] conspired or agreed to find or manufacture evidence against the Plaintiff, in order to subject him to disciplinary procedures and/or termination from employment."

Moreover, as this Court observed in its August 6, 2013 Order, "civil conspiracy is not a free-standing claim; rather it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2010 WL 2696278, at *13 (Ky. App. 2010).] Thus, a claim for civil conspiracy requires the plaintiff to establish another underlying tort. Since all of Plaintiffs' claims fail as a matter of law for the reasons discussed *supra*, the claim for civil conspiracy must fail as well.

### F. Marathon is entitled to judgment as to Count Six of the Amended Complaint.

Mrs. Mullins' claim for loss of consortium in Count Six should also be dismissed. "Loss of consortium is a wholly derivative claim that merely provides access to an additional category of damages if a defendant's liability can be established under another legal theory." *Rehm v. Ford Motor Co.*, 365 S.W.3d 570, 577 (Ky. App. 2011). Thus, because Plaintiffs cannot establish liability against Marathon on any of their other substantive claims, Mrs. Mullins has no right to an award of consortium damages against these defendants.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the Marathon Defendants' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment [Docket No. 45] be **SUSTAINED** and this matter **DISMISSED WITH PREJUDICE** and **STRICKEN** from the

docket of this Court.

This 5th day of February, 2014.